# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | |
|---|---|
| ELMO AUGUSTUS REID, *Plaintiff,* | CIVIL ACTION NO. 7:16-cv-00547 |
| v. | MEMORANDUM OPINION |
| HAROLD CLARKE ET AL., *Defendants.* | JUDGE NORMAN K. MOON |

Plaintiff, a prison inmate, seeks an injunction mandating various prison officials ("Defendants") to give him appropriate medical treatment for his liver cirrhosis and Hepatitis C. The legal basis for Plaintiff's claim is a violation of the Eighth Amendment's prohibition on cruel and unusual punishment, brought against prison officials under 42 U.S.C. § 1983 and seeking prospective injunctive relief under *Ex Parte Young*. Defendants have filed a motion to dismiss on the grounds of qualified immunity and failure to state a claim by virtue of not specifying the personal involvement of each Defendant in Plaintiff's harm.

Qualified immunity is inapplicable here as Plaintiff is seeking injunctive relief against Defendants in their official capacities. As to failure to state a claim, Defendants argue that Plaintiff has not alleged the requisite personal involvement of each Defendant to state a claim under: (1) the "special relation" requirement to abrogate Eleventh Amendment sovereign immunity under *Ex Parte Young*; (2) 42 U.S.C. §1983; or (3) the Eighth Amendment deliberate indifference standard. Plaintiff's complaint, however, is sufficient to satisfy these standards with respect to three Defendants at this stage of the litigation. In his complaint, Plaintiff directly

1

alleges the role that three Defendants (Amonette, Booker, and Shipp) play in the refusal to give him the medical care he seeks. The complaint, however, fails to allege that Defendant Clarke had the awareness of Plaintiff's medical condition necessary for a violation of the Eighth Amendment. Thus, Plaintiff has adequately stated a claim against defendants Amonette, Booker, and Shipp, but has not against Clarke. Defendants' motion to dismiss will be granted in part and denied in part.

**I.     Facts as Alleged**

Plaintiff is currently an inmate at Buckingham Correctional Center ("BCC") and has been incarcerated since 1988. (Dkt. 1 at ¶3). In 2013, Plaintiff was diagnosed with Hepatitis C and stage 4 cirrhosis of the liver. (*Id*. at ¶10). Hepatitis C is a virus that harms the liver if left untreated, and stage 4 is the most serious stage of liver cirrhosis. (*Id*. at ¶¶10, 12). Plaintiff received treatment for his condition in 2014 and 2015, but did not improve significantly. (*Id*. at ¶11).

On June 9, 2015, Plaintiff was denied continuing treatment for Hepatitis C because tests revealed his liver was functioning better than the Virginia Department of Corrections (VDOC) threshold for treatment.[1] (*Id*. at ¶12). However, no prison officials ever explained how this test result showing a relatively healthy liver could be squared with his earlier stage 4 cirrhosis diagnosis and subsequent failure to respond well to treatment. (*Id*.). Plaintiff was again informed he was ineligible for Hepatitis C in August 2016, but this time because he was scheduled for a parole hearing within six months. (*Id*. at ¶13). Plaintiff's liver function has not been re-tested since the below-threshold score in 2015. (*Id*.).

---

[1]     Plaintiff's liver function scored a 0.467 on a test known as the APRI. A score of 0.5 or higher is required for treatment under VDOC guidelines. (*Id*. at ¶13).

Plaintiff appealed the determination that he was ineligible for lack of treatment on September 7, 2016. (*Id*. at ¶ 15). Defendant Shipp, the Health Authority at BCC, denied the appeal because Plaintiff was "about to parole." (*Id*. at ¶15). Plaintiff appealed Shipp's determination on September 19, 2016. (*Id*. at ¶16). Defendant Booker, the Warden at BCC, denied this appeal on the grounds that "you must have at least 9 months remaining on your sentence" to obtain treatment. (*Id*. at ¶16). Plaintiff brought another appeal, which was addressed by Defendant Amonette, the Chief Physician at VDOC.[2] (*Id*. at ¶17). Amonette concluded that the grievance was "founded" and that Plaintiff had exhausted his administrative remedies.[3] (*Id*.). However, Plaintiff is still being denied treatment on the ground that the VDOC guidelines for treatment of Hepatitis C are currently undergoing revision.[4] (*Id*. at ¶18).

## II. Standard of Review

Defendants have filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).[5] When evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, the

---

[2] The organizational structure of the VDOC does not reveal a position called "Chief Medical Physician Manager," which is how the complaint refers to Dr. Amonette. There is however, a position entitled "Chief Physician." *See* Virginia Department of Corrections Operating Procedure 701.1, March 1, 2015. A review of other cases reveals that Mr. Amonette has recently been the subject of suits under the title "Chief Physician." *See, e.g. Gordon v. Schilling*, No. 7:15-CV-00095, 2016 WL 4768846 (W.D. Va. Sept. 13, 2016); *Obataiye-Allah v. Clarke*, No. 7:15CV00250, 2016 WL 4197607 (W.D. Va. Aug. 8, 2016).

[3] The complaint does not make clear the import of Dr. Amonette's statement. Plaintiff describes the grievance directed to Amonette as a "success," but apparently it did not authorize him to then obtain treatment. (*See* dkt. 1 at ¶ 18).

[4] The complaint does not specify the party who denied Plaintiff's treatment under this rationale.

[5] Defendants' Eleventh Amendment argument may be more suitable for resolution under a 12(b)(1) motion to dismiss for lack of jurisdiction. Courts, however, have not been uniform in their treatment of Eleventh Amendment immunity. *See Fleming v. Virginia State Univ.*, No. 3:15CV268, 2016 WL 927186, at *1 n.4 (E.D. Va. Mar. 4, 2016), *aff'd as modified*, No. 16-1364,

3

Case 7:16-cv-00547-NKM-RSB   Document 14   Filed 02/22/17   Page 3 of 12   Pageid#: 64

Court must accept as true all well-pleaded allegations. *See Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 539 (4th Cir. 2013); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and quotation marks omitted). Stated differently, in order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

## III. Discussion

Defendants have moved to dismiss Plaintiff's complaint for failure to state a claim on two grounds. First, Defendants assert they are entitled to qualified immunity in this suit. Second, Defendants argue that Plaintiff has failed to allege the personal involvement of any of the Defendants in the decision to refuse him treatment.

### a. Qualified Immunity

The qualified immunity argument is easily resolved. The law is clear that qualified immunity applies to bar suits for damages, but not for injunctive relief. *See Lefemine v. Wideman*, 672 F.3d 292, 303 (4th Cir.), *cert. granted, judgment vacated on other grounds*, 133 S. Ct. 9 (2012) ("Claims for declaratory and injunctive relief are not affected by qualified immunity."). The parties do not contest this point. Rather, Defendants have argued qualified

---

2016 WL 7030649 (4th Cir. Dec. 2, 2016). Regardless, Defendants' facial attack on Plaintiff's jurisdiction would be subject to the same procedural protections under either 12(b)(1) or 12(b)(6). *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

4

immunity on the grounds that Plaintiff sued each of the Defendants in their "personal" capacity, thus potentially implicating personal liability. (*See* dkt. 1 at ¶8). Plaintiff, however, has clarified in briefings that his complaint only seeks injunctive relief against Defendants in their official capacities, although he reserves the right to amend his complaint to seek damages should facts supporting an award of damages emerge. As there is no claim for personal damages currently before the Court, qualified immunity is irrelevant and this argument may be disregarded.

### b. Failure to State a Claim

Defendants' failure to state a claim argument is based on the theory that Plaintiff must sufficiently allege the personal involvement of each of the defendants. Defendants cite several legal standards for the proposition that a defendant's individual participation be implicated in the complaint. These standards derive from: 42 U.S.C. § 1983, the *Ex Parte Young* exception to sovereign immunity, and the Eighth Amendment's prohibition on cruel and unusual punishment. Each is considered in turn.

#### i. Ex Parte Young

The Eleventh Amendment provides sovereign immunity to the states, preventing individuals such as Plaintiff from pursuing suits that would subject an unwilling state to liability. U.S. Const. amend. XI; *see Edelman v. Jordan*, 415 U.S. 651, 663, 94 S. Ct. 1347 (1974). Eleventh Amendment immunity also applies "state agents and state instrumentalities" such as Defendants. *Lee-Thomas v. Prince George's Cty. Public Schs.*, 666 F.3d 244, 248 (4th Cir. 2012). However, under *Ex parte Young*, 209 U.S. 123 (1908), suits are permitted to enjoin state officers when there is an ongoing violation of federal law. There is a requirement under the *Ex Parte Young* doctrine, as interpreted by the Fourth Circuit, that there be a "special relation" between the allegedly unconstitutional act or law and the officer being sued. *See S.C. Wildlife Fed'n v. Limehouse*, 549 F.3d 324, 332–33 (4th Cir. 2008); *Waste Mgmt. Holdings, Inc. v.*

5

*Gilmore*, 252 F.3d 316, 331 (4th Cir. 2001); *Lytle v. Griffith*, 240 F.3d 404, 409 (4th Cir. 2001).

The requirement derives from the following language of *Ex Parte Young*:

> In making an officer of the State a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional it is plain that *such officer must have some connection with the enforcement of the act*, or else it is merely making him a party as a representative of the State, and thereby attempting to make the State a party.

*Ex Parte Young*, 209 U.S. 123, 157 (1908) (emphasis added). This "connection" or special relation "has served as a measure of *proximity to* and *responsibility for* the challenged state action." *Limehouse*, 549 F.3d at 333 (emphasis in original). The purpose of this requirement is to "ensure that a federal injunction will be effective with respect to the underlying claim." *Id*.

The challenged state action here is the denial of Plaintiff's Hepatitis C treatment. Three of the Defendants (Amonette, Booker, and Shipp) are directly responsible for the denial, having decided through the grievance and appeals process that Plaintiff is not permitted to receive the treatment he seeks. Further, there can be no doubt as to their proximity as they are officials charged with the health and safety of inmates such as Plaintiff.[6] This direct connection is sufficient to satisfy the special relation requirement of *Ex Parte Young*.

Defendant Clarke's connection, while not as direct, is nonetheless sufficient to pass the special relation test for *Ex Parte Young* actions. *See Scott v. Clarke*, No. 3:12-CV-00036, 2012 WL 6151967, at *9 (W.D. Va. Dec. 11, 2012). As Director of the VDOC, Defendant Clarke has

---

[6] Each of the Defendants' positions (Chief Physician, Warden, Health Administrator) has a direct connection to the health of prisoners such as Plaintiff. According to VDOC operating procedures, "[a]ll physicians will report to the Chief Physician clinically and to the Health Authority administratively." Virginia Department of Corrections Operating Procedure 701.1, March 1, 2015. Wardens, also known as "Facility Unit Heads" are responsible for any grievances related to prisoner healthcare. Virginia Department of Corrections Operating Procedure 720-1, December 1, 2015. The Health Authority "is authorized and responsible for making decisions about the deployment of health resources and the day-to-day operations of the medical services program." Virginia Department of Corrections Operating Procedure 701.1, March 1, 2015.

6

the duty "[t]o supervise and manage the Department and its system of state correctional facilities," and the authority to "prescribe rules for . . . the health of prisoners in state correctional facilities." Va. Code §§ 53.1-10(2), 53.1-25. The Code of Virginia also provides that "[i]t shall be the general purpose of the state correctional facilities to provide proper . . . medical and mental health care and treatment," among other things. Va. Code § 53.1-32(A). A defendant with control over the department perpetrating the alleged unconstitutional act — and with a duty to prevent the allegedly unconstitutional act occurring here — is sufficiently proximate to and responsible for the act alleged here. *See Limehouse*, 549 F.3d at 333 ("As the administrative head of the agency with responsibility for carrying out its policies and representing the agency in its dealings with the federal government, the Director possesses a sufficient connection to the alleged violation of federal law."). Thus, Plaintiff's claim against Defendant Clarke is not barred by the Eleventh Amendment because the exception under *Ex Parte Young* applies.

### ii. 42 U.S.C § 1983

Defendant cites several Fourth Circuit cases for the proposition that "[i]n order for an individual to be liable under § 1983, it must be affirmatively shown that the official charged acted personally in the deprivation of Plaintiff's rights." *See Garraghty v. Va. Dep't of Corr.*, 52 F.3d 1274, 1280 (4th Cir. 1995); *see also Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985); *Barrow v. Bounds*, 498 F.2d 1397 (4th Cir. 1974). However, the context of these cases make clear that the principle is not as broad as Defendants suggest. For one thing the "liability" in the cases cited is personal monetary damages from government officials. *See, e.g. Wright*, 766 F.2d at 844. Additionally, the cases cited addressed whether individual officers could be held personally liable under a theory of *respondeat superior* in a § 1983 case. View in this context, the cited authority stands for the principle that supervisors may not be held liable for damages

7

under a theory of *respondeat superior* in a § 1983 case — not that there is a heighted personal involvement pleading standard for § 1983 cases generally.

More generally, the § 1983 cases cited by Plaintiff were all cases in which the Plaintiff sought personal monetary liability from state officers, rather than injunctive relief from defendants in their official capacities. Plaintiff, however, cites no authority for the proposition that § 1983 cases seeking only broad injunctive relief are subject to the same pleading requirements. Indeed, the Fourth Circuit has previously held that they are not. *See D.T.M. ex rel. McCartney v. Cansler*, 382 F. App'x 334, 338 (4th Cir. 2010) ("[W]here injunctive, as opposed to monetary relief is sought, no 'direct and personal' involvement is required in order to hold high-level officials responsible for the actions of subordinates and to subject them to the equitable jurisdiction of the court." (quoting *Ogden v. United States,* 758 F.2d 1168, 1177 (7th Cir. 1985))). Other courts have similarly held that no direct personal involvement is required to sue a state official in an *Ex Parte Young* case. *See Luckey v. Harris*, 860 F.2d 1012, 1015 (11th Cir. 1988) ("Personal action by defendants individually is not a necessary condition of injunctive relief against state officers in their official capacity."); *Maioriello v. N.Y. State Office for People with Developmental Disabilities*, No. 1:14-CV-0214 GTS/CFH, 2015 WL 5749879, at *20 (N.D.N.Y. Sept. 30, 2015) (collecting cases).

That is not to say, however, that there is no requirement that plaintiffs plead a causal connection between defendants and their harm. 42 U.S.C. § 1983 allows a cause of action against an individual acting under color of law who "subjects, or causes to be subjected" another individual to a deprivation of rights. Thus, there is a requirement that there be a causal

8

connection between the Defendant and the alleged harm.[7] Accordingly, Defendants are correct that Plaintiff must allege some sort of causal connection between each Defendant and the denial of Plaintiff's medical benefits, but incorrect in asserting that Plaintiff must allege the personal involvement of each official under § 1983.

Under the standard articulated above, Plaintiff has adequately stated a claim that will allow him to proceed past the Rule 12(b)(6) stage. The Court may infer from the complaint that each of the Defendants is causally connected to the alleged deprivation: either through their actions in denying Plaintiff medical treatment or their positions as prison officials responsible for his medical care. Thus, Defendants' motion will be denied to the extent it alleges a failure to state a claim under § 1983.

### iii. Eighth Amendment

Plaintiff's cause of action is based on Defendants' deliberate indifference to his serious medical needs in violation of the Eighth Amendment. *See generally Estelle v. Gamble*, 429 U.S. 97 (1976). A violation under this theory has both objective and subjective components. Objectively, the medical issue must be "sufficiently serious," meaning that it is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *See Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (quoting *Henderson v. Sheahan,* 196 F.3d 839, 846 (7th Cir. 1999)). Subjectively, a defendant must be "deliberately indifferent," which occurs when he "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825,

---

[7]   Of course, there is also a requirement that Plaintiff establish causation in order to have standing to bring this case. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992). As the causation necessary for standing is subsumed within this discussion and not directly raised by the parties, it need not be addressed separately.

9

837; *see also id*. ("[T]he official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.").

The Parties do not appear to contest that Plaintiff's medical needs is "sufficiently serious" to plead a case under the Eighth Amendment. Regardless, Plaintiff's complaint alleges an injury sufficient to meet this requirement. Plaintiff has alleged an infection with Hepatitis C and resulting stage 4 liver cirrhosis. (Dkt. 1 at ¶ 10). Such an infirmity is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko*, 535 F.3d at 241.

The parties do contest, however, whether Plaintiff has alleged the requisite "deliberate indifference" constituting the subjective portion of an Eighth Amendment violation. For defendants in a purely supervisory positions, such as the Defendants here, there must be a showing that: "(1) the supervisory defendants failed promptly to provide an inmate with needed medical care; (2) that the supervisory defendants deliberately interfered with the prison doctors' performance; or (3) that the supervisory defendants tacitly authorized or were indifferent to the prison physicians' constitutional violations." *Miltier v. Beorn,* 896 F.2d 848, 854 (4th Cir. 1990) (internal citations omitted).

Plaintiff has adequately alleged deliberate indifference against three of the defendants: Amonette, Booker, and Shipp. Awareness of Plaintiff's alleged medical needs and purposeful failure to remedy them may constitute deliberate indifference. *See, e.g., Motto v. Corr. Med. Servs.*, No. CIV.A. 5:06-CV-00163, 2007 WL 2897854, at *4 (S.D. W. Va. Sept. 27, 2007) (finding Plaintiff had stated a claim where Defendants were "aware of his need for surgery through his filing of grievance letters, and that they were deliberately indifferent to his claims, which caused him to suffer additional pain and suffering"); *Young v. Wexford* Health Sources, No. 10 C 8220, 2012 WL 621358, at *5 (N.D. Ill. Feb. 14, 2012) ("Where, as here, Plaintiff

informed correctional officials that he was being denied access to the health care unit, those officials may be liable under 42 U.S.C. § 1983 for their purported inaction."). Additionally, a supervisor may be liable so long as they fall within "the decisionmaking chain whose deliberate indifference permitted the constitutional abuses to continue unchecked." *Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984).

Defendant alleges three acts that could constitute deliberate indifference on the part of the three aforementioned Defendants: (1) failing to retest him when there was an inconsistency between the test denying him treatment and his earlier stage 4 liver cirrhosis diagnosis; (2) denying him treatment for the non-medical reason of his upcoming parole hearing; and (3) denying him treatment for the non-medical reason of the guidelines being revised, despite a ruling that his grievance was "founded." Plaintiff thus alleges that each of the three Defendants had knowledge of his serious medical condition and took an action that prevented him from getting needed treatment for non-medical reasons. These allegations sufficiently state that each of the three defendants knew of and disregarded the serious risk to his health. *See Farmer v. Brennan*, 511 U.S. at 837.

At the motion to dismiss stage, such allegations are sufficient to plead deliberate indifference. The determination of supervisory liability for deliberate indifference is "generally is one of fact, not law," and better suited for resolution at summary judgment in this case. *Slakan*, 737 F.2d at 373 (quoting *Avery v. County of Burke,* 660 F.2d 111, 114 (4th Cir. 1981)). Defendants' motion to dismiss with respect to Defendants Amonette, Booker, and Shipp will be denied.

As to Clarke, Plaintiff has failed to adequately state a claim of deliberate indifference because he does not allege facts that allow the inference that Clarke had knowledge of Plaintiff's

medical condition. The only allegation regarding Clarke is that he is the Director of VDOC. Under *Farmer v. Brennan*, a deliberate indifference claim in this context must be premised on the fact that the defendant knew of the plaintiff's condition. *See Farmer* 511 U.S. at 837 (holding that deliberate indifference liability attaches when a defendant "knows of . . . an excessive risk to inmate health or safety" and that "the official must . . . be aware of the facts from which the inference can be drawn" that a risk of serious harm exists.) Without alleging that knowledge or awareness here, Plaintiff has failed to state a claim and defendant Clark will be dismissed from the case.

### IV. Conclusion

Defendants' motion to dismiss will be granted in part and denied in part. Defendants' qualified immunity argument is inapplicable as Plaintiff is not seeking individual monetary damages. Further, Plaintiff has adequately stated a claim to satisfy the requirements of *Ex Parte Young* and 42 U.S.C. § 1983. However, Plaintiff has failed to adequately allege deliberate indifference in violation of the Eighth Amendment as to Defendant Clarke. Without properly alleging an underlying constitutional violation, Plaintiff's § 1983 claim against Clarke cannot succeed. Thus, Defendants' motion to dismiss for failure to state a claim will be granted as to Defendant Clarke, but denied as to the other three defendants. An appropriate order will issue.

The Clerk of the Court is directed to send a certified copy of this Memorandum Opinion to all counsel of record.

Entered this __22nd__ day of February, 2017.

/s/ Norman K. Moon
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE